# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 24-1103C
(Filed: May 6, 2025)

|  |  |
|---|---|
| **ANDREW J. MULLER**, | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **UNITED STATES**, | ) ) ) |
| *Defendant.* | ) ) ) |

*James P. Barth*, Pfeifer Morgan & Stesiak, South Bend, IN, for plaintiff.

*Daniel Bertoni*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. With him on the briefs were *Yaakov M. Roth*, Acting Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director, Commercial Litigation Branch, Civil Division, Washington, DC. *Lt. Col. John Spalding*, General Litigation Division, Office of the Judge Advocate General, Department of the Navy, Of Counsel.

## OPINION AND ORDER

***BONILLA, Judge***.

Plaintiff Andrew J. Muller served as a non-commissioned officer in the United States Marine Corps (USMC) from 2007 through 2017, rising to the rank of Sergeant (E-5). His decade of military service included deployments to Iraq and Afghanistan, for which he was awarded several medals, ribbons, and citations. Following his initial deployments, a military doctor noted a concern that Mr. Muller might be suffering from post-traumatic stress disorder (PTSD). He then suffered a traumatic brain injury during his last overseas deployment. Four years later, Mr. Muller's military career derailed following his conviction in a general court-martial on assault and drunk and disorderly conduct charges. After receiving a formal medical diagnosis of PTSD while serving his term of confinement, the Naval Clemency and Parole Board upgraded Mr. Muller's bad-conduct discharge to other than honorable.

Through this action—initially filed in federal district court—Mr. Muller seeks to be awarded the Purple Heart (Count II) and to undergo a retroactive (pre-conviction) medical review to determine whether he is entitled to a medical retirement or separation and a further upgrade to his character of discharge (Counts I and III). Prior to filing this case, the Board for Correction of Naval Records (BCNR or Board) denied Mr. Muller's application for administrative relief. Pending before the Court are the parties' dispositive cross-motions. Oral argument is unnecessary. For the reasons set forth below, plaintiff's motion for judgment on the administrative record (ECF 38) is DENIED, plaintiff's alternative request to re-transfer his claimed entitlement to be awarded the Purple Heart (Count II) to the United States District Court for the Southern District of Texas (ECF 49) is GRANTED, and defendant's cross-motion to dismiss and for judgment on the administrative record (ECF 46) is GRANTED as to Counts I and III and DENIED as to Count II.

## BACKGROUND

### I. Military Service

Mr. Muller enlisted in the USMC on February 12, 2007, and entered on active duty the next day as a Private (E-1). After completing boot camp at the Marine Corps Recruiting Depot in San Diego, California, his assigned Military Occupational Specialty (MOS) was Reconnaissance Marine, wherein he served as a Field Radio Operator with the 1st Reconnaissance Battalion. Eighteen months later, then-Private First Class (E-2) Muller's command approved his lateral move to Transmissions System Operator. On August 23, 2010, then-Corporal (E-4) Muller reenlisted under the Fiscal Year 2010 Selective Reenlistment Bonus Program. After another reenlistment dated April 29, 2014, then-Sergeant (E-5) Muller continued to serve on active duty until his discharge effective November 15, 2017.

While on active duty, then-Corporal Muller deployed to Iraq on April 1, 2008, for six months. The following April, he deployed to Afghanistan for seven months. While in Afghanistan, then-Corporal Muller punched a senior non-commissioned officer on August 10, 2009. He waived his right to a general court-martial and accepted a non-judicial punishment for violating Article 128 (assault), Uniform Code of Military Justice (UCMJ).[1] Two years later, then-Sergeant Muller again deployed to Afghanistan for seven months. While traveling in a convoy from Camp Hanson to Camp Leatherneck outside Marjah on March 26, 2012, the mine-resistant ambush protected (MRAP) vehicle carrying then-Sergeant Muller and other marines struck an improvised explosive device (IED). Despite temporarily losing consciousness and suffering what was later diagnosed as a traumatic brain injury, Sergeant Muller was

---

[1] The final disposition, accounting for the suspended punishment, included a reduction in rank to Lance Corporal (E-3) and forfeiture of one-half of one month's military pay.

2

not awarded the Purple Heart—presumably for refusing medical treatment at the scene.[2]

## II. Court-Martial

On May 12, 2015, while deployed aboard a Navy ship docked at Marine Corps Base Hawaii, located on the windward side of Oahu's Mōkapu Peninsula, then-Sergeant Muller attended a barbeque at Hale Koa Beach. During the social event, Sergeant Muller—a member of the 1st Reconnaissance Battalion—confronted a sixty-one-year-old retired Navy Commander (O-5) wearing a Reconnaissance Battalion sweatshirt. Dissatisfied with the retired naval officer's explanation that his son had served in the 4th Reconnaissance Battalion, Sergeant Muller escalated the situation. When the retired naval officer attempted to walk away, Sergeant Muller pushed him from behind into a tree. Once on the ground, Sergeant Muller straddled the retired service member and punched him in the face until the retired naval officer lost consciousness and bystanders intervened. The retired service member reportedly suffered a brain bleed and multiple facial fractures.[3]

On September 15, 2015, Sergeant Muller's command preferred two charges and three specifications of aggravated assault, assault consummated by battery, and drunk and disorderly conduct in violation of Articles 128 (assault) and 134 (general article), UCMJ. Following an Article 32 hearing conducted on November 6, 2015, the charges and specifications were referred to a general court-martial on December 13, 2015. After a two-day trial conducted on April 11-12, 2016, Sergeant Muller was found guilty on both charges and all three specifications. He was sentenced to a reduction in rank to Private (E-1), six months of confinement, and a bad-conduct

---

[2] During his time on active duty, Mr. Muller was awarded a number of medals, ribbons, and citations, including the Marine Corps Good Conduct Medal, Combat Action Ribbon, National Defense Service Medal, Global War on Terrorism Service Medal, Sea Service Deployment Ribbon (three), Iraq Campaign Medal, Afghanistan Campaign Medal (two), Navy Unit Commendation (two), Presidential Unit Citation-Navy, NATO International Security Assistance Force (ISAF) Medal-Afghanistan, and Meritorious Mast (two).

[3] In his original and amended complaints, Mr. Muller seemingly seeks to excuse his violent conduct by characterizing the incident as follows: "Plaintiff, on May 12, 2015, was involved in a physical altercation with a retired Naval officer who is a convicted[] and registered[] sex offender who had recently been released from prison." ECF 1 at 4 ¶ 18 (footnote omitted); ECF 15 at 4 at ¶ 18 (footnote omitted); ECF 32 at 5 ¶ 21 (footnote omitted). He includes a substantively identical summary of the event in each of his briefs. ECF 38 at 10 ("In April 2016 [sic], Mr. Muller was involved in a physical altercation with a[] recently released from prison registered sex offender[] and retired Naval Officer.") (footnoted omitted); ECF 49 at 7 ("In April 2016 [sic], Plaintiff was involved in a physical altercation with a retired Naval Officer who was previously convicted of child pornography and registered as a sex offender[].") (footnotes omitted). Putting aside the inherent illegality of vigilantism, nothing in the record presented even suggests that Mr. Muller was aware of this information on May 12, 2015, let alone that it caused him to attack the retired service member.

discharge.[4]  The United States Navy-Marine Corps Court of Criminal Appeals affirmed the court-martial's findings and sentence.  In doing so, the appellate court rejected now-Private Muller's claims that (1) the judge presiding over his court-martial improperly denied the defense's request to present expert witness testimony regarding the seriousness of the victim's injuries, and (2) the failure to present evidence that PTSD contributed to the May 12, 2015 incident constituted ineffective assistance of counsel.  *United States v. Muller*, No. 16-294, 2017 WL 3186979 (N-M. Ct. Crim. App. July 27, 2017).  The United States Court of Appeals for the Armed Forces denied Private Muller's petition for grant of review.  *United States v. Muller*, 77 M.J. 73 (2017) (table).

On March 29, 2017, following Private Muller's formal PTSD diagnosis, discussed *infra*, and with the assault victim's endorsement, the Naval Clemency and Parole Board upgraded the character of Private Muller's discharge to other than honorable.[5]  Mr. Muller's post-discharge petition to be awarded the Purple Heart for the injuries he sustained during the March 26, 2012 IED explosion in Afghanistan was denied due to his discharge status.

### III.  PTSD Diagnosis

Following then-Corporal Muller's initial deployments to Iraq and Afghanistan in 2008 and 2009, a military doctor noted a "possible concern for PTSD."  AR 71–72.  For context, the March 1, 2010 entry in the Chronological Record of Medical Care (SF-600) was seven months after then-Corporal Muller's initial assault charge and two years prior to his suffering a traumatic brain injury in the IED-caused vehicle accident during his second deployment to Afghanistan.  The administrative record is devoid of any further mention of PTSD until after Sergeant Muller's April 2016 court-martial.

---

[4] As defined in the Manual for Courts-Martial:

> A bad-conduct discharge applies only to enlisted persons and may be adjudged by a general court-martial and [certain] special court-martial . . . . A bad-conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature. It is also appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary[.]

Joint Service Committee on Military Justice, Manual for Courts-Martial, Pt. II, § 1003(b)(8)(C) (2024), *available at* https://jsc.defense.gov/Military-Law/Current-Publications-and-Updates/ (last visited May 5, 2025).

[5] An other than honorable discharge is an administrative (as opposed to punitive) discharge and is the least favorable administrative characterization of service.  *See N.G. v. United States*, 94 Fed. Cl. 375, 380–81 & nn.2 & 4 (2010).

While serving his six-month term of confinement at the Camp Pendleton Base Brig in California, then-Private Muller sought mental health services. In a memorandum dated July 27, 2016, a psychiatric nurse practitioner at the Camp Pendleton Naval Hospital noted Private Muller's recent PTSD diagnosis, opining that "it appears that some of his symptoms were contributing factors in his conduct on 12 May 2015." AR 77. Following Mr. Muller's November 15, 2017 discharge, the United States Department of Veterans Affairs assigned him a 100% disability rating for PTSD.

### IV. Procedural History

In August 2018, Mr. Muller applied for administrative relief before the BCNR, seeking to further upgrade the character of his discharge to at least a general discharge under honorable conditions. Three months later, on November 14, 2018, the BCNR administratively closed his case, improvidently concluding that Mr. Muller failed to exhaust his administrative remedies by first petitioning the Naval Discharge Review Board (NDRB). The NDRB in turn rejected Mr. Muller's subsequent request for relief on July 17, 2019, explaining that the board's jurisdictional authority did not extend to discharges awarded in connection with a general court-martial. Mr. Muller resubmitted his BCNR application on June 30, 2020, amending his request to include the award of the Purple Heart and a retroactive medical retirement or separation in addition to a further upgrade to the character of his discharge. The BCNR denied relief on February 11, 2021.

Mr. Muller commenced this action in the United States District Court for the Northern District of Indiana on July 31, 2023, seeking to challenge the BCNR's denial of his application for administrative relief. Upon the parties' joint motion, by order dated October 13, 2023, the case was transferred to the United States District Court for the Southern District of Texas to cure a venue defect. Following the transfer, the government filed a motion to dismiss the complaint in its entirety or, in the alternative, to transfer the military discharge and disability claims to this Court. By order dated July 17, 2024, the federal magistrate judge transferred the entire case to this Court pursuant to 28 U.S.C. § 1404(a). *Muller v. United States*, No. 23-3946, 2024 WL 3448015, at *1–2 (S.D. Tex. July 17, 2024).

## DISCUSSION

### I. Purple Heart

Dating back to August 7, 1782, and established by then-Commander-in-Chief of the Continental Army George Washington as the Badge of Military Merit, the Purple Heart is the oldest military award presented to United States service members today. Although laid dormant for well over one-hundred years following

the American Revolutionary War, over two million Purple Hearts have been awarded since World War I.[6]

On December 3, 1942, President Franklin D. Roosevelt signed Executive Order No. 9277 titled *Award of the Purple Heart to Persons Serving with the Navy, Marine Corps or Coast Guard of the United States*, including the following mandate:

> The Secretary of the Navy is authorized and directed to award the Purple Heart in the name of the President of the United States to persons who, while heretofore or hereafter serving in any capacity with the Navy, Marine Corps or Coast Guard of the United States, are wounded in action against an enemy of the United States, or as a result of an act of such enemy, provided such would necessitates treatment by a medical officer.

7 Fed. Reg. 10125 (Dec. 3, 1942). Since the issuance of this Executive Order, Presidents and Congress have clarified and largely expanded the eligibility criteria to ensure deserving service members are duly recognized. *See, e.g.*, Executive Order No. 13758, 82 Fed. Reg. 5321 (Jan. 12, 2017); 10 U.S.C. §§ 1129, 1129a, and 1131. Specific to the Marine Corps, eligibility requirements for the Purple Heart are codified in SECNAVINST 1650.1H (Aug. 22, 2006).

In Count II, Mr. Muller contends the BCNR wrongly denied his entitlement to be awarded the Purple Heart for the injuries he sustained in the IED explosion in Afghanistan on March 26, 2012. Fatal to Mr. Muller's claim—at least in this Court— is the fact that there is no monetary renumeration associated with the Purple Heart. In fact, the challenged denial of an award of military medals, decorations, and ribbons—readily distinguishable from claims for back pay and medical retirement or separation pay under 37 U.S.C. § 204 and 10 U.S.C. §§ 1201 and 1203—does not constitute a claim for money damages upon which this Court may render judgment under the Tucker Act, 28 U.S.C. § 1491(a). In the absence of that jurisdictional hook, the issue lies outside this Court's statutory authority to adjudicate. *Curtis v. United States*, 33 Fed. Cl. 586, 589 (1995) ("A claim for a military decoration . . . is not a claim for money damages, and, accordingly, does not meet the standards of the Tucker Act."), *aff'd*, 86 F.3d 1175 (Fed. Cir. 1996) (per curiam) (table), *quoted with approval in Sanders v. United States*, No. 24-1067, 2025 WL 313171, at *6 (Fed. Cir. Jan. 28, 2025) (per curiam); *see Mote v. United States*, 110 F.4th 1345, 1353 (Fed. Cir. 2024) ("The [Court of Federal Claims] . . . 'has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.' The Tucker Act expressly grants the [Court of Federal Claims] power only to order the 'correction of

---

[6] *See A Heart of Purple: The Story of America's Oldest Military Decoration and Some of its Recipients*, National Archives Prologue Magazine Vol. 4 No. 4 (Winter 2012). *available at* https://perma.cc/FCN8-777T (last visited May 2, 2025).

applicable records' that are 'incident of and collateral to' its award of a money judgment.") (citations omitted).

Rather than simply dismiss Count II, the Court must consider whether (re)transfer to a court with jurisdiction is in the interest of justice. Title 28, United States Code, Section 1631, provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed . . . .

28 U.S.C. § 1631. "Transfer under this section is appropriate when (1) the transferring court lacks jurisdiction, (2) jurisdiction lies in another court, and (3) transfer is in the interest of justice." *Ramos-Quiroz v. United States*, 172 Fed. Cl. 1, 7 (2024) (quotation marks and citations omitted), *appeal dismissed*, No. 24-1851, 2024 WL 3894165 (Fed. Cir. Aug. 22, 2024) (per curiam).

The first two requirements are easily satisfied and favor retransfer to the district court whence it came. As explained above, and acknowledged by both parties, this Court lacks jurisdiction to adjudicate non-monetary claims for military medals, decorations, and ribbons. In contradistinction, district courts possess jurisdiction to address the precise issue presented here: whether a military corrections board's denial of a service member's administrative request for the award of the Purple Heart is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See, e.g.*, *McKinney v. Wormuth*, 5 F.4th 42, 45 (D.C. Cir. 2021) ("This court has exercised jurisdiction to review a denial of a Purple Heart award.") (citing *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014)). These jurisdictional lines are amply demonstrated by the government's litigative approach to this case while it was pending in the Southern District of Texas. The government sought to dismiss Mr. Muller's Purple Heart claim—not for lack of subject matter jurisdiction—but for failure to state a claim upon which relief can be granted (i.e., failure to meet eligibility requirements). In contrast, the government moved to dismiss Mr. Muller's claims for a retroactive medical retirement or separation and his related challenge to the characterization of his discharge on jurisdictional grounds as well as failure to assert a cognizable claim. Most telling, the government's alternative motion to transfer Mr. Muller's claims to this Court specifically exempted the Purple Heart claim.[7] *See Muller v. United States*, No. 23-3946 (S.D. Tex.) (ECF 16) (filed Jan. 31, 2024). Accordingly, this Court concludes that Mr. Muller's claimed entitlement to the award

---

[7] Contrary to the assertions of "bad faith litigation" littered throughout Mr. Muller's reply brief, the government has not engaged in "jurisdictional gamesmanship," "jurisdictional flip-flops," "abuse [of] the judicial process," "forum manipulation," "manipulative tactics," "procedural gamesmanship," or otherwise attempted to "obstruct justice" or "undermine the rule of law and erode public confidence in the judiciary." ECF 49 at 8, 17–20, 22.

7

of the Purple Heart could have been brought at the time it was originally filed in the Southern District of Texas.[8]

Turning to the third and final element, transferring Count II back to the district court clearly serves the interest of justice. As this Court recently explained:

> "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed. Cir. 1985)). The decision to transfer "rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011) (quoting *Faulkner v. United States*, 43 Fed. Cl. 54, 56 (1999)).

*Ramos-Quiroz*, 172 Fed. Cl. at 8 (quoting *Martin v. United States*, 169 Fed. Cl. 342, 345–46 (2024)). Notwithstanding the government's arguments to the contrary, Mr. Muller's claimed entitlement to be awarded the Purple Heart is not frivolous and warrants a merits determination in the appropriate judicial forum whatever the ultimate outcome. *See Toohey v. United States*, 105 Fed. Cl. 97, 99 (2012) ("[T]he transfer statute language 'persuasively indicates that transfer, rather than dismissal, is the option of choice[.]") (quoting *Britell v. United States*, 318 F.3d 70, 73 (1st Cir. 2003)); *see, e.g.*, *Mata v. United States*, 118 Fed. Cl. 92 (2014) (Court of Federal Claims transferred "plaintiff's only surviving claim" back to the originating district court after concluding the claim "is not money-mandating"); *cf. Cooper v. Dept. of the Navy*, 108 F.3d 324, 327 (Fed. Cir. 1997) (Federal Circuit affirmed decision of Merit Systems Protection Board to dismiss appeal as moot while simultaneously transferring back to the district court the remaining claims over which the appellate court lacked jurisdiction); *see also Ramos-Quiroz*, 172 Fed. Cl. at 2 ("Rather than shut the courthouse doors procedurally or sit idly by while litigation continues where it ought not, this opinion and order seeks to ripen the matter for disposition in the appropriate court whatever the ultimate outcome.").

---

[8] In transferring this case, the district court erroneously cited the Change of Venue statute, 28 U.S.C. § 1404(a), rather than the applicable Transfer to Cure Want of Jurisdiction statute, 28 U.S.C. § 1631, quoted *supra*. *See Fisherman's Harvest, Inc. v. PBS & J*, 490 F.34 1371, 1378 (Fed. Cir. 2007) ("[W]e hold that the Court of Federal Claims is not a 'district or division' to which a district court may transfer a case pursuant to 28 U.S.C. § 1404(a)."). Presumably, the Federal Circuit nevertheless would have had jurisdiction to review the district court's transfer order in accordance with 28 U.S.C. § 1292(d)(4)(A) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States . . . granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title."). Although that opportunity has now passed, this Court may endeavor to establish the appropriate jurisdictional alignment between claims and judicial fora. *See, e.g.*, *Ramos-Quiroz*, 172 Fed. Cl. at 1.

In reaching this conclusion, the Court declines both parties' invitations to examine or otherwise weigh-in on whether Mr. Muller initially met all eligibility requirements to be awarded the Purple Heart in connection with the March 26, 2012 IED explosion in Afghanistan while he was serving on active duty and, if so, whether he thereafter disqualified himself for failing to continue serving honorably. As the parties' briefing makes clear, such an assessment would require an examination of Mr. Muller's medical records and incident reports to determine whether the factual predicate for the award of the Purple Heart is plausibly present. The next step would be to interpret and apply the labyrinth of cited Executive Orders, statutes, Department of Defense Instructions, and Secretary of the Navy Instructions to determine whether the BCNR's denial of administrative relief was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Congress expressly left these endeavors to federal district courts.

## II. PTSD

Throughout the pendency of Mr. Muller's post-discharge appeals, his PTSD-claims have continuously evolved. In his initial BCNR application, the relief requested was limited to a further upgrade of the character of his discharge. Upon resubmission, Mr. Muller further sought a retroactive medical retirement or separation. The original complaint filed in the Northern District of Indiana sought a pre-court-martial medical evaluation under the Disability Evaluation System (DES). Although Mr. Muller did not specifically request a retroactive medical retirement or separation, there are only three possible outcomes of the Medical Evaluation Board (MEB) and Physical Evaluation Board (PEB) assessments: retention, medical separation, or medical retirement. *See* SECNAV M-1850.1 ch. 1 ¶ 2(d) & app. C-3 (Sept. 2019); *Carlborg v. United States*, 168 Fed. Cl. 371, 379–80 (2023), *aff'd*, No. 24-1339, 2024 WL 4675290 (Fed. Cir. Nov. 4, 2024) (per curiam), *petition for cert. filed*, __ U.S.L.W. __ (U.S. Apr. 30, 2025) (No. 24-1121). The amended complaint filed in the Southern District of Texas added his contention that the BCNR erred in denying him a retroactive medical separation or disability retirement. ECF 15 at 7. Mr. Muller's second amended complaint (i.e., the operative post-transfer complaint filed in this Court) cites the medical retirement and separation pay statutes, 10 U.S.C. §§ 1201 and 1203, and restates his claim that the BCNR erred in denying him a retroactive medical separation or disability retirement. ECF 32 at 2, 7.

Notwithstanding the specific language included in his formal pleadings—curiously seeking to divest this Court of jurisdiction over his PTSD claim and returning it to the district court—Mr. Muller states in his reply brief:

> Mr. Muller has never requested the District Courts or the COFC[] to make a finding for a disability retirement. At all times during this litigation, Mr. Muller has consistently held he is only looking for a retroactive medical evaluation, that which would better guide the BCNR

9

> for consideration of possible discharge relief which could include either General, Honorable, Medical, Disability, or a discharge the BCNR deemed appropriate after consideration of a full medical review. *See* ECF No. 15 (Prayer for Relief); ECF No. 19 (Prayer for Relief); ECF No. 32 (Prayer for Relief). This is further supported by Mr. Muller's introduction in ECF No. 19, Pg. 7, where his expresses that "[t]his case is not about monetary gain, . . ."

ECF 49 at 13. To be clear, in his successive prayers for relief, Mr. Muller does not formally demand medical retirement or separation backpay or future pay and benefits. But, as noted *supra*, the import of his claim for a retroactive DES medical assessment necessarily carries the prospect of a statutory entitlement to the pay and related benefits associated with a medical retirement or separation beyond the characterization of Mr. Muller's discharge. That some or all of these financial renumerations will be offset by the post-discharge disability benefits he has and continues to receive from the Department of Veterans Affairs does not impact this Court's jurisdictional authority over Mr. Muller's PTSD-based claim.[9]

This Court's jurisdiction is predicated upon money-mandating *claims* as opposed to the prospective *net results*. *See Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course."). Unlike his Purple Heart claim, Mr. Muller's claim for a retroactive DES medical evaluation is inextricably intertwined with a medical retirement or separation—both carrying statutory entitlements to post-separation pay and benefits. *See id.* at 1174 ("[Plaintiff] has little difficulty establishing that § 1201 is understood as money-mandating."); *Verbeck v. United States*, 89 Fed. Cl. 47, 61 (2009) ("Section 1203 is a money-mandating statute for the same reasons that Section 1201 is a money-mandating source of law for purposes of the jurisdiction of this court."), *quoted in Keltner v. United States*, 165 Fed. Cl. 484, 499 (2023); *see also Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004) ("It is well established that the Military Pay Act is a money-mandating statute.") (citing *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)). Readily distinguishable from the plaintiff in *Coleman*

---

[9] *See Hutchinson v. United States*, 168 Fed. Cl. 504, 511 (2023) ("As a general matter, 'even if a veteran qualifies for both retired pay from the Department of the Army and disability benefits from the V.A., the veteran cannot receive the full amount of each because 38 U.S.C. § 5304 prohibits duplication of benefits. In such a case, the veteran may elect to waive the portion of retired pay that would be duplicative of disability benefits and, thereby, become entitled to receive the disability benefits in addition to the unwaived portion of retired pay.'") (quoting *Burkins v. United States*, 112 F.3d 444, 447 (10th Cir. 1997) (further citations omitted)). Any anticipated offset does not take into account the potential budgeting implications of shifting entitlement from the Department of Veterans Affairs to the Department of Defense and Department of the Navy/Marine Corps.

*v. Kendall*, Mr. Muller has not affirmatively waived his right to medical retirement or separation pay.[10]  *See* 74 F.4th 610, 616 n.3 (4th Cir. 2023).

Turning to the merits of Mr. Muller's claim for a retroactive DES medical assessment, there is no basis in fact or in law upon which to disturb the BCNR's denial of administrative relief.  Consistent with the amorphous nature of his PTSD claim, Mr. Muller fails to specify the date upon which he should have been declared unfit for continued military service.  At one end of the timeline, Mr. Muller points to the March 1, 2010 entry in his medical record of a "possible concern for PTSD."  At the other end, Mr. Muller suggests "a point in time immediately before his [April 11-12, 2016] court-martial."  ECF 38 at 28.  Presumably, a third option would be immediately after the March 26, 2012 IED explosion in Afghanistan, wherein he suffered a traumatic brain injury.  A fourth election would be on or about May 11, 2015 (i.e., the day before Mr. Muller assaulted the retired Naval officer on Hale Koa Beach).

As an initial matter, Mr. Muller's contention that PTSD excused or otherwise contributed to his actions on May 12, 2015, is contradicted by the findings and conclusions reached by the U.S. Navy-Marine Corps Court of Criminal Appeals in affirming Mr. Muller's general court-martial conviction and sentence:

> The appellant had no formal diagnosis of PTSD at the time of trial.
>
> During the presentencing proceedings, the appellant called four witnesses and admitted 16 affidavits, all from people he served with throughout his career, including in combat environments. Every person attested to his good character and performance as a Marine. Notably, not one mentioned ever observing in the appellant any signs or symptoms of PTSD. In fact, they spoke of him as someone not exhibiting the typical signs of PTSD—such as being short-tempered and aggressive. The appellant also gave an unsworn statement, which included chronicling his combat experiences as a Reconnaissance Marine and his numerous deployments. Again, there was no mention of any signs, symptoms, or diagnosis of PTSD.
>
> We disagree with the appellant's assertion that "[g]iven the defense counsels' awareness of [his] combat experience and the facts of his assault of the victim, it was unreasonable and deficient to forego examination of [the appellant] for potential PTSD before his trial."

---

[10] Although not dispositive, it is worth noting that the district court which transferred this matter to this Court, and where Mr. Muller seeks retransfer, already decided—in this very case—that it lacks jurisdiction over Mr. Muller's PTSD claim for the reasons stated above (i.e., money-mandating medical retirement and separation statutes).  *See Muller*, 2024 WL 3448015, at *1–2.  As explained *supra*, Mr. Muller failed to timely appeal that interlocutory order to the Federal Circuit.

11

> Merely because the appellant had combat experience and then committed an assault while he was drunk at a party, does not mean, *ipso facto*, that his defense counsel were deficient for failing to investigate the option of having him tested for PTSD.

*Muller*, 2017 WL 3186979, at 4–5.  Reevaluation of these findings and conclusions is well outside the "narrow window of collateral attack review" of this Court.  *See West v. United States*, 145 Fed. Cl. 112, 125 (2019) (quoting *Matias v. United States*, 923 F.2d 821, 826 (Fed. Cir. 1990) (quoting cases)), *aff'd*, 847 F. App'x 927 (Fed. Cir. 2021).  As further explained in *West*:

> The Court [of Federal Claims] "does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal." . . . And so, the Court may review court-martial convictions only where the alleged infirmities at the court-martial rise to a constitutional level.

145 Fed. Cl. at 125 (quoting *Flute v. United States*, 535 F.2d 624, 626 (Ct. Cl. 1976)).  No such constitutional claims have been asserted in this case.

Instead, Mr. Muller's challenge to the BCNR's denial of his application for administrative relief rests principally on the Board's conclusion that he did not qualify for a DES referral because he was fit for continued military service at all times leading up to his general court-martial.  In support, Mr. Muller asserts that the Board improperly relied upon information included in his fitness reports and character evidence presented during his general court-martial in violation of SECNAVINST 1840.4E ¶ 3205.  His reliance upon this instruction is misplaced.

SECNAVINST 1840.4E is the Department of the Navy Disability Evaluation Manual.  Paragraph 3205, included in Part 2 titled "Policies Concerning Referral of Cases to the Physical Evaluation Board," provides in relevant part:

> a. *When a member is referred for physical disability evaluation*, an assessment of the member's performance of duty by his or her chain of command may provide better evidence of the member's ability to perform his or her duties than a clinical estimate by a physician. Particularly in cases of chronic illness, non-medical documentation may be expected to reflect a member's capacity to perform accurately.
>
> b. Provide non-medical documentation in all Medical Board reports to include:

> (1) Except in situations of critical illness or injury or where the member has been declared "Death Imminent", a statement from the member's immediate commanding officer, executive officer, company commander, or command senior enlisted advisor addressing:
>
> . . .
>
> (e) Commanders are also required to complete the non-medical documentation form and submit a narrative assessment on how the service member's medical condition impacts on his/her ability to perform military duties. Enclosure (11) contains the [non-medical assessment (NMA)] form and an example of a narrative assessment.

ECF 36-1 at 316–17 (SECNAVINST 1840.4E ¶ 3205(a)–(b)) (emphasis added). Isolating and taking subsection (b)(1)(e) out of context, Mr. Muller argues that the BCNR could not consider non-medical documentation without his commander first completing and submitting the NMA form (i.e., Enclosure 11).

Both the title of the cited Disability Evaluation Manual provision and the above-emphasized text of the complete subsection relied upon make clear that the touted NMA form is required "[w]hen a member is referred for physical disability evaluation."[11] *Id.* at 317. Mr. Muller was not referred for a PEB, rendering the instruction inapplicable. In contrast, this Court has long sanctioned the practice of reviewing fitness reports in making temporal fitness for continued military service determinations. *E.g.*, *O'Hare v. United States*, 155 Fed. Cl. 364, 375 (2021); *Krauss v. United States*, 40 Fed. Cl. 834, 841 (1998), *aff'd*, 185 F.3d 886 (Fed. Cir. 1999) (per curiam) (table); *Dzialo v. United States*, 5 Cl. Ct. 554, 564 (1984); *cf. Ford v. United States*, 172 Fed. Cl. 300, 312–13 (2024) (BCNR's consideration of favorable fitness reports prior to relevant injuries are not probative of continued fitness for military service). Accordingly, the BCNR properly relied upon Mr. Muller's fitness reports in assessing his contemporaneous fitness for continued military service.

As found by the BCNR, Mr. Muller's fitness reports support the conclusion that he remained fit for continued military duty. For example, his fitness report for the reporting period November 15, 2015 to March 31, 2016—following the May 12, 2015 physical altercation and immediately before the convening of his April 11-12, 2016 general court-martial—included a "highly qualified" rating and the following narrative excerpt:

---

[11] The Court assumes Mr. Muller's exclusion of the framing clause included in § 3205(a) in briefing this issue was an oversight.

13

> I believe he displays the physical, intellectual, and moral virtue expected of a Non-Commissioned Officer. His positive attitude, competency, and drive to succeed have made him a very important part of the Company training cell. I recommend Sergeant Muller be promoted with his peers.

AR 133. Although a medical record from March 1, 2010 notes "a possible concern for PTSD," AR 71–72, the record presented is devoid of any indication that Mr. Muller was unfit for duty at any time during the intervening six years prior to his general court-martial conviction and incarceration. This case is readily distinguishable from *Hassay v. United States*, wherein there was no recent fitness report demonstrating plaintiff's fitness for continued military service at the time of his discharge, and the record was rife with medical evidence to the contrary. *See* 150 Fed. Cl. 467, 479–482 (2020).[12]

There is similarly no reason to disturb the BCNR's conclusion that even if Mr. Muller's July 27, 2016 PTSD diagnosis merited a DES referral, his general court-martial conviction and impending misconduct discharge would have superseded any disability-based separation. Paragraph 3403 of the Disability Evaluation Manual makes clear that service members "being processed for misconduct which could result in a punitive discharge" are generally ineligible for DES referrals and disability retirements or separations. *See* ECF 36-1 at 326–27 (SECNAVINST 1850.4E ¶ 3403(a)–(b)). On this point, the Federal Circuit has explained that the only way to avoid a misconduct discharge taking precedence over disability proceedings is for a service member to show they were "'unable to appreciate the nature and quality or wrongfulness of the acts' under SECNAVINST 1850.4E ¶ 3414.b." *Malcolm v. United States*, 752 F. App'x 973, 977 n.2 (Fed. Cir. 2018). In this case, Mr. Muller does not claim eligibility under this exception. Accordingly, Mr. Muller's challenge to the BCNR's reliance upon his criminal conviction and sentencing in independently finding him ineligible for a DES referral must fail.

One final matter warrants mention. In his complaint, Mr. Muller references the series of Department of Defense memoranda directing military corrections boards to employ "liberal consideration" in evaluating applications by veterans seeking discharge upgrades, particularly those related to mental health conditions like PTSD and traumatic brain injuries. ECF 32 at 10. In his principal brief, however, Mr. Muller makes no mention of this issue. His reply brief similarly makes no mention of the memoranda and includes only one passing reference to "liberal consideration" in summarizing other BCNR decisions related to his claimed entitlement to be awarded the Purple Heart. ECF 49 at 32. Consequently, Mr. Muller has waived this argument. *Advanced Magnetic Closures, Inc. v.*

---

[12] Of note, following remand the Court sustained the BCNR's conclusion that the plaintiff was fit for continued military service until his discharge. *Hassay v. United States*, 174 Fed. Cl. 614, 629 (2025), *appeal filed*, No. 25-1546 (Fed. Cir. Mar. 17, 2025).

14

*Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief.") (citing cases). For completeness, the Court notes that the BCNR expressed its position that "liberal consideration" can be found in the grace already afforded Mr. Muller by the Naval Clemency and Parole Board in upgrading his bad-conduct discharge to other than honorable.

## CONCLUSION

For the reasons stated above:

(1) Plaintiff's motion for judgment on the administrative record (ECF 38) is **DENIED**;

(2) Defendant's cross-motion to dismiss and for judgment on the administrative record (ECF 46) is **GRANTED-IN-PART** (Counts I and III) and **DENIED-IN-PART** (Count II);

(3) The Clerk of Court is directed to **ENTER** judgment in favor of defendant as to Counts I and III;

(4) Plaintiff's request to transfer Count II back to the United States District Court for the Southern District of Texas is **GRANTED**; and

(5) The Clerk of Court is directed to **TRANSFER** Count II of plaintiff's second amended complaint (ECF 32) back to the United States District Court for the Southern District of Texas in accordance with 28 U.S.C. § 1631.

It is so **ORDERED**.

Armando O. Bonilla
Judge